LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

JAMES G. WARWICK
Assistant U.S. Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
Telephone: (410) 209-4860
Telecopier: (410) 962-3124
Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
SEP 28 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> ) <br> vs. ) <br> ) <br> HAJI SUBANDI, ) <br> REINHARD RUSLI, and ) <br> HELMI SOEDIRDJA, ) <br> ) <br> Defendants. ) | CRIMINAL CASE NO. 06-00044 <br><br> **COMPLAINT** <br><br> **CONSPIRACY TO EXPORT DEFENSE ARTICLES** <br> [18 U.S.C. § 371 and 22 U.S.C. § 2778] |

THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

<u>The Export and Import of Defense Articles</u>

1. The export from, and import into, the United States of arms, munitions, military aircraft parts, and related components, and the technology to build such items, is strictly controlled by statutes and regulations.

2. The Arms Export Control Act, Title 22, United States Code, Section 2778, and the International Traffic in Arms Regulations (the "ITAR"), Title 22, Code of Federal Regulations,

Part 120, authorize the United States Department of State's Directorate of Defense Trade Controls ("the DDTC") to establish the United States Munitions List ("the Munitions List").

3. The Munitions List is a catalog of designated "defense articles" which are subject to export and certain import restrictions. Any person who intends to export, or import temporarily, defense articles on the Munitions List from or into the United States is required to first obtain a license from the DDTC. An applicant for an export or temporary import license from the Department of State must identify in the required license application the ultimate and final destination of the goods, which in the trade is referred to as the "end user."

4. Included on the Munitions List are assorted classifications of conventional weapons, ammunition as well as components designed and manufactured for use by the military, including night vision technology.

5. The export of any Munitions List item to the Republic of Indonesia requires a license from the DDTC.

6. ITT Industries, with offices at Roanoke, Virginia develops and manufactures night vision technology, including the Monocular Night Vision Device (MNVD), Model AN/PVS-14. EOTech designs, manufactures and markets electro-optics products and systems, including the EOTech Holographic Weapons Sight, Model M-522. It has headquarters in Ann Arbor, Michigan. These items are found on the Munitions List and cannot be legally exported from the United States without a license from the DDTC.

COMPLAINANT FURTHER STATES:

7. I, John C. Burgess, being a Special Agent with the U.S. Immigration and Customs Enforcement (ICE) of the Department of Homeland Security, state that ICE maintains an undercover business in the United States for the purpose of investigating possible violations of the Arms Export Control Act. I am assigned to the Baltimore, Maryland office, and acting in my official capacity, set forth the following:

2

## The Conspiracy to Violate the Arms Export Control Act

8. From in or about August of 2006 through the date of this Complaint, in the United States Territory of Guam, the District of Maryland, the Republic of Indonesia and elsewhere, **HAJI SUBANDI, REINHARD RUSLI and HELMI SOEDIRDJA,** the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other, and with others, to commit offenses against the United States, that is, to export, and temporarily import, defense articles listed on the Munitions List without the required license, contrary to Title 22, United States Code, § 2778 and 18 U.S.C. Section 371.

## The Object of the Conspiracy

9. The object of the conspiracy was to enrich the defendants by shipping Munitions List items to customers in the Republic of Indonesia without obtaining the appropriate license from the United States Department of State, Directorate of Defense Trade Controls, in violation of the Arms Export Control Act.

## The Manner and Means of the Conspiracy

10. It was part of the conspiracy for the defendants to act as brokers and middlemen between manufacturers and distributors of technology produced for military use and to military specifications, and purchasers of such technology. The purchasers, or "end users," of this technology were individuals and/or entities located within the Republic of Indonesia.

## Overt Acts

11. Beginning in or about March of 2004 **Haji Subandi** made inquiries to an undercover business in the United States to acquire equipment adapted to United States military special forces use, including night vision goggles, for export from the United States to the Republic of Indonesia. As months passed, **Subandi** made numerous inquiries regarding the purchase of Munitions List technology. In August of 2006, **Subandi** placed an order with the undercover business to purchase a Monocular Night Vision Device (MNVD), Model AN/PVS-14 and a EOTech Holographic Weapons Sight, Model M-522 for a total of approximately $2,950. This

3

purchase was intended as a sample for a larger order for the same or similar devices to be consummated in the future. On or about August 31, 2006 **Subandi** sent a wire transfer in the amount of $2,950, more or less, to a bank account in the United States maintained by the undercover business from a bank in the Republic of Indonesia as payment for the aforementioned device.

12. In an electronic mail sent by **Subandi** to the undercover business, he stated that an individual named **'Reinhard'** had contacts within the Indonesian military and would be assisting in the transaction.

13. On September 21, 2006 **Haji Subandi, Reinhard Rusli and Helmi Soedirdja** arrived in the United States Territory of Guam to meet with an undercover officer for the purpose of taking delivery of certain aforementioned night vision devices and to discuss the acquisition of other Munitions List items, to be exported from the United States without a license as required by DDTC.

14. On September 22, 2006 **Subandi** met with undercover agents in Guam and discussed the delivery of the aforementioned night vision device and described to the undercover officers the roles of **Rusli** and **Soedirdja** in the transaction. **Subandi** described **Rusli** and **Soedirdja** as being his financial partners who were providing the monetary backing for both the current transaction as well as future deals.

15. On September 23, 2006 **Subandi, Rusli** and **Soedirdja** met with undercover officers in Guam and discussed the delivery of the sample Monocular Night Vision Device (MNVD), Model AN/PVS-14 and the EOTech Holographic Weapons Sight, Model M-522. **Subandi, Rusli** and **Soedirdja** asked to examine the devices as well as other sample night vision equipment which are controlled by the Munitions List. During this meeting, the undercover officers made clear to **Subandi, Rusli** and **Soedirdja** that the transfer of these devices was illegal without licenses being first obtained from the DDTC. **Subandi, Rusli** and **Soedirdja** verbally acknowledged that each understood that the proposed transaction was illegal and re-affirmed

4

their intent to participate in this and future transactions by affirmatively stating, in substance and in part, that each 'was in.' **Subandi, Rusli** and **Soedirdja** discussed with the undercover officers the safest method of smuggling the devices out of the country through the international airport at Guam and spoke of additional illegal transfers of Munitions List items to be consummated in the future.

16. On September 24, 2006 **Subandi, Rusli** and **Soedirdja** again met with the undercover officers and took possession of a Monocular Night Vision Device (MNVD), Model AN/PVS-14, a Model PVS-7 night vision device and the EOTech Holographic Weapons Sight, Model M-522. Each of these devices is controlled by the Munitions List and requires an export license. **Subandi, Rusli** and **Soedirdja** also agreed to wire transfer into an undercover bank account additional funds as further payment for the devices. **Subandi, Rusli** and **Soedirdja** again discussed the safest method of smuggling the devices through the Guam airport and **Rusli** and **Soedirdja** stated they planned to depart the United States Territory of Guam with the devices on an evening flight to Indonesia on September 24, 2006.

17. Based on the foregoing, I believe that there exist probable cause to believe that **Haji Subandi, Reinhard Rusli and Helmi Soedirdja** have committed the offense of Conspiracy to Violate the Arms Export Control Act contrary to Title 22, United States Code, § 2778 and 18 U.S.C. § 371.

JOHN C. BURGESS
Special Agent
Bureau of Immigration &
Customs Enforcement

SUBSCRIBED AND SWORN to before me this 28th day of September, 2006.

JOAQUIN V.E. MANIBUSAN, JR.
U.S. Magistrate Judge
District of Guam

5